Good morning, Illinois Appellate Court. First District Court is now in session. The Second Division, the Honorable Justice Nathaniel House presiding. Case number 21-1314, R.E.N. Acquisitions v. Paccar Leasing Company, Washington Corporation. Good morning. This case is being heard via Zoom due to the COVID crisis. My name is Nathaniel House. I'm a Justice of the Illinois Appellate Court. I'm presiding over this case with me. Justices David Ellis and Cynthia Cobbs. We're going to proceed as follows today. Each side will be given approximately 10 minutes to present basically uninterrupted presentation, after which in turn, we'll ask each party questions. Following the questions, we will allow the appellant a short period of time for rebuttal. And after that, we'll be allowed to ask questions of either party if we decide to do that. Do you have any questions about how we're going to proceed today? No. Okay. Who's going to present argument for the appellant? Please state your name. Hi, my name is Casey Grabenstein for the appellant. Okay. And for the appellee? Hi, my name is David Ruskin for the appellee. All right. Thank you. All right. I'll give you a little signal when you got two minutes left to go. Mr. Grabenstein, you may proceed when you're ready. Thank you so much. It's good to see everyone this morning. My client is a beer distributor that leased several trucks from the defendant. The city of Chicago imposed a 9% lease tax on those trucks. And the issue in this litigation is who is responsible for paying that tax between the parties under the terms of the party's agreement. The trial court erred when it found that my client was responsible for paying that tax. And the court erred for multiple reasons. First and foremost, the defendant PACCAR leasing is obligated to pay certain fees and taxes under Section 4A of the agreement. And that includes ad valorem taxes. Now, the phrase ad valorem is not defined in the party's agreement. Accordingly, we look to common dictionary definitions to determine what that term means. And dictionaries define an ad valorem tax as one that is in proportion to the estimated value of the goods or transaction concerned. And because the Chicago lease tax is imposed based on the proportion of the value of the lease transactions at issue, it is an ad valorem tax. Now, respectfully, the defendant and my opposing counsel here are wrong that Illinois courts have issued a definitive ruling or guidance on what that phrase ad valorem tax means that contradicts these common dictionary definitions. No Illinois court has been tasked with deciding what that phrase means. And no Illinois court has issued definitive guidance. Both of the cases on which PACCAR leasing relies dealt with a very specific and narrow issue relating to a 1970 constitutional amendment that dealt with ad valorem taxes on assessed property, on assessed personal property. And that constitutionality issue has caused some confusion, I think, in the briefing below and potentially in this court. I'm happy to address it, but the point is, no Illinois court has said that an ad valorem tax is X, Y, or Z. So, we need to look to dictionaries. Further, as a practical matter, my client's interpretation is the only one that makes sense. It gives the phrase ad valorem tax meaning. PACCAR leasing's interpretation gives that term no meaning whatsoever. It does not explain what the term means, and it's just rendered completely meaningless, which is contrary to Illinois law. The court should give effect to the words that are in the contract. Your honors, the second ground for reversal is that the agreement has an appendix or schedule that provides that PACCAR leasing will also pay the sales tax on any leased vehicles. And again, we look looking to a dictionary, Black's Law Dictionary, defines a sale tax as a tax imposed on the sale of goods and services, usually measured by a percentage of price. Because the lease tax is imposed as a percentage of price, it is also a sales tax. Your honor, just briefly, the court's third error was in not finding that the agreement is at least ambiguous. The parties have submitted to you all dozens and dozens of what a few key terms mean. It should not take that much paper to explain a contract that is straightforward. And if there is some ambiguity, the party should be entitled to discovery to understand what the contract means. This is especially true because PACCAR leasing claims that the term ad valorem tax means something different in other states and has a meaning outside of Illinois. We should be able to get discovery into what that is and why it doesn't apply in Illinois. At the very least, the agreement's ambiguous and we should be entitled to discovery. The final reason for reversal, your honors, is that PACCAR leasing independently breached the agreement when it failed to collect this tax. The Chicago Municipal Code has a very procedure that requires the lessor in the first instance to collect the tax and pay it to the city of Chicago. The problem is that nobody collected this tax for nearly 10 years. And as a result, almost half of the money at issue here is accumulated interest because nobody was paying this tax. I disagree with PACCAR leasing that this issue was not raised or alleged in the complaint. It's specifically mentioned at paragraphs 21 and 33 of our complaint. It was also extensively briefed in the trial court. We briefed this issue of the obligation to collect the tax in connection with the defendant's motion to dismiss. And then we with the motion for the defendant's motion for judgment on the pleading. So this issue has been raised at every turn and operates as an independent basis for reversal. So your honors, those are the four reasons why we believe that reversal is warranted and that we ask that you reverse and unless there's anything further, I'm going to stop there. Thank you. Do we have any questions? Justice Cobb? Why would we look to other jurisdictions just because we can't find what we're looking for in particular in Illinois with respect to ad valorem? We have, as you say, the dictionary is available to us. I'm not certain why we would look to other jurisdictions which might define ad valorem differently from what we have in the past even defined it. Have we ever defined it in Illinois? I would say no, your honor. And I think it's appropriate to look to dictionaries. And just to be clear, I wasn't suggesting that we look outside of the state of Illinois to see how other courts have defined it. The point that I was trying to raise is that in response to our argument that the PACCAR's reading of ad valorem gives it no meaning, they've raised the issue in the briefing that maybe it means something different in other jurisdictions and that's why they have it in their contract. And so it may be in Georgia they do pay an ad valorem tax but they don't in Illinois. And my point was at the very least that would seem to entitle us to discovery, to understand what did PACCAR leasing mean when it put this phrase in the contract that it drafted. Is that a discovery issue or a question of fact? I mean a question of law. I think that, I'm sorry your honor, the issue you've raised is a discovery issue. And that was what I was getting to as the third grounds that even if you disagree with our interpretation, at the very least you have to find this contract ambiguous and entitle us to discovery as to what was meant there. So it's an alternative ground your honor. We think our interpretation is right, but at the very least if the contract is ambiguous then we should be entitled to understand exactly what PACCAR intended and what the parties intended. I have nothing. Justice Ellis? Mute, you have to unmute yourself. I apologize. Good morning Mr. Grabenstein. Good morning. Very briefly, so there's no direct case on point that describes ad valorem, but when we talk about ad valorem, aren't we by definition talking about the value of something and not the cost of something? I think that some of these terms are interchangeable. So value, price, cost, I mean the fair market value of something is what is the price or cost that someone is willing to pay. So I would submit your honor that- Is that really true? That's not my understanding of that. The fair market value of a home is not necessarily the price of the home. I mean they look, they value, you know, if you're talking about a home, okay, you'll get like three comps that are similar houses to get an idea of what the fair market value should is for it. But that doesn't mean that's the price. You could sell it below that, above it. They might be the same in any given situation, but the price of something is a fixed number that one side chooses. The value of something is a more subjective thing, isn't it, that you have to arrive at by taking people's opinions? I think the value of something is just simply the numerical figure. And the first definition I read said the value of a transaction, the first definition. I don't know under the framework you've proposed how you would, what the value of a transaction would be and sort of the rubric. I mean, if somebody walked, if you walked by my house and said, what's the fair market value of that house? You'd say, I don't know, I probably have to get a few appraisers to tell me what they think. But if you said, what is the price of that house? You could look it up and say, oh, he bought it for this much money, or he's listing it for this much money. It'd be a single, one party would picket the seller. Whereas the fair market value would be just, I don't know, here's what I think, what do you think? You don't agree with that? Your Honor, I don't, and I haven't, respectfully, I mean, I haven't seen any, and if there was something that made that distinction or authority, I would certainly consider it. I just have, I haven't seen that. And at the very least, I think the exchange that we're having maybe shows there's some ambiguity here because I haven't seen that distinction drawn either in dictionaries, the case law. We spend a lot of time on this and I haven't, I have not seen that. Okay. All right. Thank you. If you were to walk into a store, just any old store, and the item that you pick up from the shelf has a cost on it, a price on it, you don't then get to go to the cash register and say, well, I know what the cost is, but it's the value is this. And the store would say, well, this is what it costs. And then if you decide that it's not worth that value, you decide not to pay that cost. So I think that the terms aren't as ambiguous as you suggest. I think price and cost tell us how someone has determined to value something, but the price or the cost is one thing and how you value an item is quite different. I don't know that I believe that there is ambiguous as you suggest. Well, I don't, okay. Thank you. I don't think there's a question, but I'll, I understand your point. Thank you. You know, the ordinance which creates this tax directs who's to pay it. It says the lessee is to pay it. It's true the lessor is supposed to collect it, but the lessee is supposed to pay it. Now, if you had an understanding that you're going to go against this municipal ordinance, shouldn't there have been a specific provision in the contract that overrides a municipal ordinance or is one required to override a municipal ordinance directing payment? Well, your honor, the municipal code you're talking about requires the lessor to collect it in the first instance. It has a very lengthy procedure for doing that. I would submit that the parties have not modified that provision, which is incorporated into the contract. Right. And it says if they don't pay it, then the lessee has to pay it. But ultimately, the lessee is the one responsible under the ordinance. You agreed to assume everything from your predecessor in that basically just putting everything even because the lessor should have been collecting. That means that your predecessor should have been paying. They never paid, and now you're on the hook for it. And basically, what's happening is that a debt which should have been paid by your predecessor is now on you. Yeah, I guess the question I would ask then is what's the point of that municipal code if it has no meaning? If it imposes a duty to collect a tax that really isn't a duty, then that's just totally pointless municipal code. Because I understand what you're saying, that if they don't do their job, then it defaults to us. But what's the point of asking them to do their job in the first place? If that's just an illusory obligation, we should just write it out of the municipal code. I do think there was an obligation that was breached by the defendant here by not collecting the tax. And as a result, almost $100,000 worth of interest accumulated. You didn't argue that that provision should somehow be written out of the code? You don't argue that, do you? No. We're definitely not arguing that. We're not modifying the code or attempting to modify the code. I was actually saying that the interpretation that that is a meaningless obligation would write it out of the code. It's the code itself that does that, right? I mean, you're right. The code does say the tax is supposed to be collected by the lessor. It says that. But then it also says if the lessor fails to collect or remit, the lessor shall be liable to the city or the lessee. Ultimately, the lessee is responsible, right? Even if the lessor does not do their job. That is correct. So I think that was Justice House's point. So even if you're right that they should have collected it and didn't, that doesn't change your liability for the tax, does it? Well, I would say that we're both somewhat responsible in that situation. And again, maybe it's my frustration at the code, but if the position is that... I guess what's the point of that? What's the point of obligating the they don't have to do it, and then it falls to the lessee. And that can't be what was intended. There has to be a real life obligation on the lessor. Otherwise, what's the point of that language? I don't understand it, I guess. And shouldn't they be obligated to comply with the law in the first instance? Whether there's some shared responsibility for not paying the tax, I don't know. But both parties essentially were required to know about this, to collect it, to pay it, and neither party did. Any other questions? All right. Thank you, Mr. Gravenstein. Mr. Ruskin, you can proceed when you're ready. Thank you, Your Honors. May it please the court. My name is David Ruskin. I represent PACCAR Leasing Company. They are the defendant in the underlying case. The underlying case was fairly straightforward as it was a breach of contract related to the lease between PACCAR, a lessor, leasing the truck's vehicles to our an acquisition, the plaintiff in this case. As you have read and heard a little bit about, we did file a motion for judgment on the pleadings based on the complaint and the court judge did find, she made two specific findings of law, one of which is that the Chicago personal property lease transaction tax, which I will limit to Chicago lease tax as we talk about this to make it a little bit easier. She found that the Chicago lease tax is not an ad valorem tax and she also found and determined that the Chicago lease tax is not a local sales tax. And those were important decisions and supported the judgment on the pleadings because the complaint is based on just that, those two points. Our lease, the lease between the parties has a provision in it that specifically says ad valorem taxes among other taxes and permits and fees will be the obligation of PACCAR, the lessor. It also has in its schedules a reference to and so in the complaint, the crux of the complaint is that the Chicago lease tax for which the plaintiff was assessed by the city of Chicago qualifies as either an ad valorem tax or a local sales tax. And so in our motion for judgment on the pleadings, we said absolutely not, they are neither and the circuit court judge agreed. She, her decision was correct and that's why the plaintiff filed the appeal. We are the appellee and we ask that you uphold that decision. I do want to address some of the points that council made and I will do that in turn and certainly address any questions that your ad valorem question first. And I think it's, I found it, find it interesting in the briefing and found it interesting in the argument just now because council gave us a definition of ad valorem. I think it was from the dictionary because the claim is that there is no definition anywhere in Illinois, but the definition from the dictionary specifically said that it is proportional to the value of the goods. And I think it was Justice Ellis, maybe, maybe also Justice Cobb said that inquired about the difference between value and price and that's exactly right. The definition that he gave that it is on the value of the goods is absolutely correct. That's the definition of ad valorem. The Latin itself, you can look to the name, it's according to value and value is different than price. It's very different. The price, and I think again, it was Justice Ellis who said the price is something that the parties agree on, just like a lease payment in this case. The price you agree on, the value is something very different. It's intrinsic, can have different values for different people. And an ad valorem is based on the value. If you go to the lease tax itself, the subject of the case, the lease tax, let's see, it's under, this is in our briefs, 3-32-30 that specifically identifies the tax imposed by the Chicago lease tax. It specifically says the rate, I'm reading under B, quote, the rate of the tax shall be 9% of the lease or rental price. Specifically says price. And it goes on further under B to say each tax payment shall be determined by applying the tax rate to the lease or rental payment. It doesn't say anything about value. There's nothing in the Chicago lease tax, if you look through the entirety of the Chicago lease tax, that identifies value as the subject of the tax. It is the price. And we know why it doesn't say anything about value, because ad valorem taxes or any tax on the value of personal property was abolished in Illinois in 1979, actually 1970, but to be abolished in 1979. It has been since then. There cannot be an ad valorem tax on personal property in Illinois, at least as of today. And that's under the Illinois Constitution. So there may not be a specific definition, going back to the claim that there's some dispute over the definition of ad valorem. There's no dispute. We know exactly what it is. The delegates of the Illinois Constitutional the ad valorem tax knew exactly what they were doing. And there's quotes in our brief from at least one of those delegates. They didn't want to have tax on the value assessed of personal property any longer. It had to be on something else. And since that day, when that decision was made, ad valorem taxes are not allowed in Illinois. So that's at least one of the reasons why the Chicago lease tax, when it was enacted by the city of Chicago, doesn't say anything about taxing value. It taxes the price. The price in this case of our lease and of any other leases. There are certainly cases that talk about ad valorem taxes. We cited a couple of them. Do they go into the specific value? I'm sorry, into the definition? No, not really. But they don't need to. There's no ambiguity when we're talking about an ad valorem tax on personal property. Different, of course, than an ad valorem tax on real property. I think the example was brought up earlier. But certainly ad valorem taxes on real property are alive and well in Illinois. We all probably have some experience with owning property. And the way that property taxes in Illinois are assessed on an ad valorem basis is the value is assessed by the county assessor. And then you're taxed, whatever the tax rate is on that particular value. That's an ad valorem tax on real property. But you will not see that in Illinois on personal property. It's not allowed. There's no ambiguity there. And there's no ambiguity in the lease itself. It's very clear. If you look at the provision, which is 4A of the lease, it very specifically says ad valorem taxes. And the fact that we don't agree, apparently, on what the definition of ad valorem is doesn't make it ambiguous. And there's case law on that that we cite too. If we disagree on the meaning, we disagree on the meaning. The judge in the circuit court sided with our argument that the meaning is one thing. And Mr. Gramenstein says it's another thing. But that doesn't make it ambiguous. And it doesn't allow automatically for discovery or even require any discovery. So I think that sales tax issue too, because that was another basis in the complaint that the Chicago lease tax is also a sales tax. It was the basis for the judge's ruling on our motion for judgment on the pleadings. I mean, I think I find this to be even simpler than the ad valorem tax. A sales tax is a tax on goods and services that are sold. Title is transferred. That's a sales tax. I think we all know what that is when you go into a store and you purchase something. Presumably, there's going to be a sales tax on, especially in Illinois. And that is very different from a lease tax. The Chicago lease tax is on leases. I read you from the lease tax earlier. And you can go back and look at it. It is specifically on leases. There is nothing in the Chicago lease tax about sales or about transfer of title. It's only in leases. They're very different. There's a reason they're different. They tax different items. And one isn't the other. If you go into an auto shop to lease a car, title isn't transferred. You're expecting to lease it and pay lease payments. If you go into purchase a car, you're buying a piece of personal property. So that's just one example of the simple. And I don't think there's any ambiguity in terms of what a sales tax versus a lease tax is. I do want to address... Thank you. You're about 10 seconds away from the end. No, that's okay. I would prefer to hear questions and address any questions you have. Thank you very much. All right. Any questions? Justice Cobb? I have no questions. Justice Ellis? Just one. I think I know the answer from this oral argument. I was going to ask you if ad valorem taxes are not allowed in Illinois, why are we seeing this in this contract? Is your answer because you put this contract out throughout the country and other jurisdictions do have the ad valorem tax? Yes, of course. I say of course. I don't mean that. What I mean by that is you read the entire contract, the lease, you can tell it's not just meant for trucks being leased in Illinois. There are references throughout the lease about other states. In fact, I think it's important also, if I can find the lease itself here. In the lease, I just want to make sure everyone is aware of this. I will point to a record, page 2 for the record. The lease, this is record, page C25. The lease itself on page 8 of the lease contains, this is one of the many clauses it contains, a savings clause under paragraph 19. I'm going to read it because it's short. It's just one sentence. It says, if any provision of this agreement is invalid under the laws of any state when used, such provision shall be deemed not to be a part of this agreement in such state, but shall not invalidate any other provision hereof. This is exactly what we have here. We've got essentially a provision calling for PACCAR to be responsible for ad valorem taxes in a state where ad valorem taxes on personal property is illegal. Thank you. Any other questions? I have no questions. All right. Thank you, Mr. Reskin. Mr. Gravenstein, you may take a couple minutes for rebuttal. Thank you. I just want to make a few brief remarks. We've spent a lot of time talking about the difference between the words value and price. What we have not done, though, is reference any case law or dictionary or any third-party, second-party source regarding the meaning of those two terms. This has just been basically an anecdotal discussion of the differences of those terms. I would submit, again, that the market value of something is the price. Now, the reverse may not be true necessarily. I'm sorry. The price of something is the market value. The reverse may not be true, but the amount someone's willing to pay for something in the market is the price, and it is the value of that item. I would encourage... I think we also need to consult other reference materials. I haven't heard anything from opposing counsel, or there's nothing in the brief about... There's no dictionary definition. There's no case law definition distinguishing those two terms. I don't think we can have a decision based on the difference between those terms without some sort of deeper dive into those two terms. I would also... My parting comment is through all this, through the appeal, through the trial court, Packard has not been able to explain what ad valorem taxing means in the real world and what means in this contract. To me, that remains a fatal flaw in this argument. It should be... If it's simple, as opposing counsel says, tell us what it means. What does that phrase mean? We haven't heard that throughout the entirety of these proceedings. With that, Your Honor, I'll rest. Any other questions? No? All right. Very well. This matter will be taken under advisement and decision issued in due course. The case is well-argued and well-briefed. Thank you, and have a great day, both of you. Thank you.